IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Louis Huff,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 11-0773-TUC-FRZ (BPV)<br><br>**REPORT AND RECOMMENDATION** |

On November 30, 2011, Petitioner, William Louis Huff, an inmate confined in the Arizona State Prisons Complex – Lewis in Buckeye, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254. (Doc. 1)[1]

The District Court screened the petition and denied Petitioner's request for damages, but ordered the Petition served on Respondents. (Doc. 5) Respondents have filed an answer to the Petition (Answer) with exhibits A through B attached. (Doc. 10) Petitioner filed a reply (Reply) with several exhibits attached. (Doc. 12) Additionally, Petitioner has filed an "Amendment to Complaint," (doc. 11), A "Request to Make Supplemental Addition to Exhibits," (doc. 13), a letter requesting permission to allow statements (doc. 15), a 'Request to Submit Letter for Filing Purposes," (doc. 16), and a "Request to Submit Psychological Report" (doc. 17).

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.

---

[1] "Doc." refers to the documents in this Court's file.

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order DISMISSING the Petition as untimely

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Conviction, Sentencing and Appeal

Petitioner pled guilty to second-degree murder in 1967 and was sentenced to a prison term of 40 years to life. (Doc. 1, at 2) [2] No appeal was taken from the judgment of conviction. (Doc. 1, at 2-3)

#### B. Parole Proceedings

Petitioner asserts that, in 1982 he was paroled to the custody of the Federal Bureau of Prisons (BOP). (Doc 1, at 6) In 1983, the BOP set a presumptive parole date of June 28, 1984, and notified the State of Arizona of Petitioner's imminent release, in order to allow the State to set a "street parole hearing," *i.e.*, assign a parole officer, set conditions, and to allow for dual supervision. Petitioner alleges that he received State approval for parole, and, accordingly, the BOP released Petitioner on December 18, 1983, to a halfway house where he stayed for 4 ½ months. (Doc. 1, at 6) Petitioner states that in April, 1984, he was charged with a "minor infraction" of his parole, and returned to federal prison, but contends he was found "not guilty" by the parole commission, and was released to a halfway house again in November, 1984. (Doc. 1, at 7) While Petitioner was in Oklahoma, and unbeknownst to him, Tucson residents became outraged after a parolee killed a Tucson child and a citizen watchdog group titled "We the People" became active concerning parole of inmates. Upon returning to the halfway house from Oklahoma, Petitioner resumed his programs – he secured employment at the airport and participated in counseling, while his brother and his wife supported Petitioner. Petitioner became eligible for furloughs and was allowed to visit his parents in Sierra Vista, Arizona on Christmas Day. The Sierra Vista police were notified of Petitioner's visit. At some point, apparently after his return from Sierra Vista, Petitioner was questioned by a Pima County

---

[2] Respondents have asserted that, "due to the age of this case, counsel … have been unable to locate any state court records pertaining to Petitioner's case." Respondents do not contest the procedural background of Petitioner's conviction, sentence or appeal, as provided by Huff in the Petition.

Sheriff's Deputy about the halfway house. Two days later, U.S. Marshals took Petitioner into custody because of a "mix-up in paperwork." (Doc. 1 at 8.)

Petitioner claims that his return to custody was actually the result of community outrage and public outcry demanding the removal of offenders who were convicted of violent offenses following a tragic crime committed by another individual while on parole. (Doc. 1, at 7-8) Petitioner claims that in the 26 years following this revocation the Board of Executive Clemency, politically motivated and acting vindictively in retaliation for Petitioner's claims that his parole was wrongfully revoked, uses "various reasons now, other than that for which he was violated for," including the wrongful retroactive application of new laws to continue to deny Petitioner parole. (Doc. 1, 7-9)

Petitioner asserts that he raised his claims in an "informal petition" filed in the Arizona Court of Appeals on June 10th or 12th, 2011, explaining that his "first petition was informally written in letter form requesting a review of [his] case, concerning the Arizona Board of Executive Clemency" and requested relief on the grounds of "due process, presumption of vindictiveness, cruel and unusual punishment, [violation of] . . . civil rights, applying new laws in this case, increasing [Petitioner's]incarceration. (Doc. 1 at 4-5) This "application" was denied. (*Id*.)

### C. Federal Habeas Petition

Petitioner raises four grounds for relief. In Ground One, Petitioner alleges that he is currently incarcerated due to the denial of due process in connection with revocation of parole granted in 1985. In Ground Two, he alleges that "Parole Board members" vindictively and in a retaliatory and racially discriminatory way extended his incarceration for pre-textual reasons. In Ground Three, Petitioner alleges that the Arizona Board of Executive Clemency has violated his Eighth Amendment right not to be subjected to cruel and unusual punishment by retroactively applying new criteria in new parole hearings. In Ground Four, Petitioner alleges that the Arizona Board of Executive Clemency has violated the *Ex Post Facto* Clause of the Constitution by applying laws that were not in effect at the time he was convicted and sentenced. (Doc. 1, at 6-9)

**II.     DISCUSSION**

    A.     Standard of Review

Because Huff filed his Petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

    B.     Timeliness

Under the AEDPA, a one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1). Respondents assertion that the petition is untimely under 28 U.S.C. § 2244(d)(1)(A) based on the date the judgment became final is erroneous. Because Huff is challenging a parole revocation decision, the limitation period begins to run on "the date on which the factual predicate of the claim ... presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D); *see Redd v. McGrath*, 343 F.3d 1077, 1082 (9th Cir. 2003) (applying § 2244(d)(1)(D) to parole denial claim with time running from date of parole decision); *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003) (same with respect to parole revocation); *Cook v. New York State Div. of Parole*, 321 F.3d 274, 280 (2nd Cir. 2003) (same).

The running of this one-year statute of limitations on habeas petitions for state convictions is tolled during any period when "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in any state court. *See* 28 U.S.C. § 2244(d)(2). An application contemplated by section 2244(d)(2) is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). The United States Supreme Court has held that untimely state post-conviction petitions are not "properly filed" under AEDPA, and do not toll AEDPA's statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

The Ninth Circuit recognizes that the AEDPA's limitations period may be

equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Calderon v. United States Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997), overruled, in part, on other grounds by, *Calderon v. United States Dist. Ct.,* 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Id.*; *see also, Miranda v. Castro*, 292 F.3d 1063, 1067 (9th Cir. 2002)(stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citations omitted); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). The extraordinary circumstances requirement is a "high hurdle," *see Calderon*, 128 F.3d at 1289, and policy considerations counsel against equitable tolling. *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

        C.     Analysis

The Magistrate Judge finds that, pursuant to the AEDPA, the Petition filed in this Court is untimely. Huff had until one year after the discovery of the factual predicate for his claim to file his federal petition. Because the Ninth Circuit has held AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis, *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012), the undersigned will review the claims individually to determine if any of the claims are timely filed.

### 1. *Date of Discovery of Factual Predicate: Claims Based on Parole Revocation in 1985*

The factual predicate for the claims that Petitioner's parole was revoked in violation of due process (Ground One) and that the parole revocation was motivated by racial discrimination (Ground Three), were discoverable on the date Huff's parole was revoked, sometime in 1985. AEDPA's one-year time limit, however, did not begin to run against any state prisoner before the date of the Act's enactment. *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). Thus, for claims arising before the enactment of the AEDPA, Huff had 1 year from the effective date, April 24, 1996, to April 24, 1997, within which to file his petition. *Ford v. Pliler*, 590 F.3d 782, 784 (9th Cir. 2009); *Bryant,* 499 F.3d at 1058; *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Huff did not file his federal application until November 30, 2011. Thus, the statute of limitations on Petitioner's claims related to the revocation of parole in 1985 expired on April 24, 1997. In the absence of statutory or equitable tolling, these claims are untimely.

### 2. *Date of Discovery of Factual Predicate: Claims Based on Violation of Ex Post Facto Clause of the Constitution*

The remainder of Petitioner's claims arises from the Arizona Board of Executive Clemency's continued denial of parole since 1985 based on the application of new criteria due to vindictiveness, retaliation and discrimination (Ground Two) in violation of *ex post facto* laws (Grounds Three and Four), which resulted in Petitioner being subjected to "cruel and unusual punishment" (Ground Three).

Huff argues that, as a result of these violations, he was denied parole "52 times" over the last "27 years." (Doc. 12, at 6) Petitioner also alleges that the new criteria being applied to his revocation hearings in violation of *ex post facto* principles became

applicable after 1987. Thus, the factual predicate of Petitioner's claims regarding parole revocation hearings occurring after 1985 could have been discovered with reasonable diligence as early as 1985 or 1986, and at the latest by 1987.[3] Successive denials of parole which do not involve separate factual predicates do not warrant separate statute of limitations calculations.[4] *See e.g. Carrillo v. Cate*, 2009 WL 2575888 *2 (S.D. Cal 2009)("Where a prisoner alleges a change in policy constitutes an *ex post facto* law, each continued application of the same policy does not involve separate factual predicates.")(citing *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261–62 (11th Cir.2003) and *McAleese v. Brennan*, 483 F.3d 206, 217–19 (3rd Cir. 2007)); *Wolfel v. Timmerman-Cooper*, 2009 WL 330294 (S.D. Ohio 2009)(Noting both lack of authority supporting petitioner's argument that the continuing violation doctrine should apply in habeas corpus proceedings, as well as courts' reluctance to apply the continuing violation doctrine outside of Title VII claims); *Whitmore v. Miller*, 2011 WL 2746125 (W.D. Oklahoma)(the ability to discover factual predicate, by definition, could not involve a "continuing" period of time); *but see Chavez v. Lewis*, 2012 WL 538242, *4 (N.D. Cal 2012) (When facts established at a previous administrative decision form the basis of a denial of a more recent administrative decision, the factual predicate of claim is determined by the more recent administrative decision, not the earlier one). Accordingly,

---

[3] Petitioner alleges these violations occur at each denial of his application for parole, and has attached three exhibits concerning the Board's denial of parole at three recent hearings. (Doc. 1, Exs. 1-3) In the most recent denial, Petitioner states that the Board is not giving him credit for addressing his behavior, that the Board uses different reasons each time to deny parole, and the charge of "anger control" is false. (Doc. 1, Ex. 3) Though it is possible that a new factual predicate for a claim arising out of a recent parole decision could be timely, the allegations raised by Petitioner regarding the most recent denial do not establish a new factual predicate because Petitioner argues that these violations have occurred throughout his entire history with the Board.

[4] Though Petitioner does not specifically argue that the continuing violations doctrine should be applied in this case, he does assert that "Petitioner is still presently suffering egregious pain, that does not reflect a period in time, 27 years ago entirely, but his complaint is encompassing conditions of 'today' in which those pains are ever present." (Doc. 12, at 5) Petitioner also states that he "continues to be affected in 2012, by those same proceedings, deemed unconstitutional." (Doc. 12, at 4) The undersigned construes these assertions as an argument for application of the continuing violations doctrine in this case.

- 7 -

the statute of limitations on Petitioner's claims related to the Board's continued denials of parole based on new statutory criteria also expired on April 24, 1997, and in the absence of statutory or equitable tolling, these claims are untimely.

### 3. *Statutory Tolling*

The filing of Petitioner's "informal petition" for relief with the Arizona Court of Appeals in June, 2011, could not revive the statute of limitations because it had already lapsed. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003). Neither did the informal petition restart the limitations period. *See id.*

### 4. *Equitable tolling*

Petitioner asserts that he was "incarcerated at 16 years of age, in 4 different states . . . with no access to Arizona law or guidelines laws pertaining to the AEDPA." Petitioner asserts "it came 29 years after Petitioner was convicted." (Doc. 12, at 7) A petitioner's *pro se* status, illiteracy, or unfamiliarity with the law do not, by themselves, constitute grounds for failure to comply with AEDPS's 1–year statute of limitations. *See, Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010); *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Donovan v. Maine*, 276 F.3d 87, 94 (1st Cir. 2002). Petitioner does not explain how his age at the time of conviction in 1967 is causally connected to his failure to file a timely habeas claim nearly 30 years later when the statute of limitations expired in 1997. Furthermore, the absence of legal assistance or access to a law library also do not warrant equitable tolling. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that there is no "freestanding right to a law library or legal assistance."). A petitioner's inability to access information about the statute of limitations deadline, however, may warrant equitable tolling. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir.2000) (en banc) (remanding case to district court for development of facts concerning whether AEDPA materials were unavailable in the prison law library and the legal significance of such a finding). A petitioner must demonstrate a causal connection between the unavailability of case law in the prison library and the untimeliness of his habeas petition," to be entitled to equitable tolling. *Bryant*, 499 F.3d at 1060.

The record as submitted in this case does not demonstrate that Petitioner had no

access to the AEDPA, or that a lack of access to other caselaw was causally connected to the untimeliness of Huff's Petition. Though Petitioner alleges he was incarcerated in four different states outside of Arizona, the relevant statute of limitations found in the AEDPA is a federal statute, and, absent an allegation that Petitioner had no access to the AEDPA after its enactment, Petitioner fails to raise an allegation of extraordinary circumstances that would justify equitable tolling. Finally, Petitioner states, regarding the unavailability of either the AEDPA or Arizona laws or guidelines, that they were "never made available to the Petitioner. It came 29 years after Petitioner was convicted." It is not clear if Petitioner is referring to the AEDPA coming 29 years after his conviction, or the availability of relevant state laws. Regardless, Petitioner waited more than a decade after this before filing this Petition, and thus has not demonstrated that he has been pursuing his rights diligently. Accordingly, this Court finds no cause for equitably tolling the limitations period in this case.

### D.     Other Pending Motions

Petitioner has filed an "Amendment to Complaint," (doc. 11), A "Request to Make Supplemental Addition to Exhibits," (doc. 13), a letter requesting permission to allow statements (doc. 15), a 'Request to Submit Letter for Filing Purposes," (doc. 16), and a "Request to Submit Psychological Report" (doc. 17).

Should the District Court adopt this Report and Recommendation and deny the Petition as untimely, the Magistrate Judge recommends denying these requests as moot. Should the District Court find the Petition timely, the Magistrate Judge recommends referring these requests to the Magistrate Judge for further review.

### III.    RECOMMENDATION

This Court recommends that the District Court, after its independent review of the record, DISMISS this action in its entirety as untimely and DENY all pending motions and requests (Docs. 11, 13, 15, 16, 17) as MOOT.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served

with a copy thereof. Fed.R.Civ.P. 72(b).

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.

If objections are filed the parties should use the following case number: **CV 11-0773-TUC-FRZ**

**Dated this 11th day of September, 2012.**

_____
Bernardo P. Velasco
United States Magistrate Judge